1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    PETER J. NOWICKI,                          Case No. 17-cv-00629-SI

8                  Plaintiff,

9         v.                                    ORDER GRANTING DEFENDANTS'
                                                MOTIONS TO DISMISS THE
10   CONTRA COSTA COUNTY                         COMPLAINT AND GRANTING LEAVE
     EMPLOYEES' RETIREMENT                       TO AMEND
11   ASSOCIATION, *et al.*,                      Re: Dkt. Nos. 31, 36

12                 Defendants.

13

14        On June 9, 2017, the Court held a hearing on defendants' motions to dismiss plaintiff's

15   complaint. For the reasons set forth below, the Court GRANTS defendants' motions, and

16   GRANTS leave to amend. If plaintiff wishes to amend the complaint, plaintiff must do so by **July**

17   **10, 2017**.

18

19                                    **BACKGROUND**

20        Plaintiff Peter J. Nowicki is a retired fire chief who served in the Moraga-Orinda Fire

21   District in Contra Costa County from June 1983 until his retirement on January 30, 2009. Compl.

22   at ¶¶ 15-21 (Dkt. No. 1). Defendants are the Contra Costa County Employees' Retirement

23   Association ("CCCERA"), CCCERA Board members John B. Phillips, Scott W. Gordon, Russell

24   V. Watts, David J. MacDonald, Jerry Telles, Debora Allen, Candace Anderson, Gabriel

25   Rodrigues, William Pigeon, Louie A. Kroll, Jerry R. Holcombe, and Todd Smithey ("CCCERA

26   Board"), the Moraga-Orinda Fire District ("Fire District") and Fire District Board members Steve

27   Anderson, John Jex, Kathleen Famulener, Brad Barber, and Craig Jorgens. *Id*. at ¶ 11.

28        The complaint alleges that CCCERA is a retirement board within the meaning of

United States District Court
Northern District of California

United States District Court
Northern District of California

California Constitution, Article XVI, section 17(h) and the County Employees Retirement Act of 1937, Cal. Gov't Code section 31450 *et seq*. *Id*. at ¶ 10. Section 17(a) of Article XVI of the California Constitution provides that "[t]he retirement board of a public pension or retirement system shall have sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries." C.A. CONST. art. XVI §17(a).

Plaintiff received a promotion from Battalion Chief to Fire Chief in July 2006. *Id*. at ¶ 15. Plaintiff alleges that he initially raised concerns about the lower salary and benefits offered as Fire Chief. *Id*. Fire District Board President Gordon Nathan and then Fire Chief Jim Johnston assured him "that an annual review would be conducted of Nowicki's salary and benefits and an appropriate adjustment would be made to his Fire Chief contract." *Id*. After his promotion, plaintiff's contract with the Fire District awarded him $173,000 in annual salary and a vacation accrual policy of 20 hours per month, and had a cap at 400 hours. *Id*.

The Fire District amended plaintiff's contract on February 6, 2008, retroactive to July 2007. *Id*. at ¶ 16. The amended contract increased his salary to $186,000, and added a "vacation sell-back" provision. *Id*. This enabled plaintiff to sell up to 200 hours (per year) of unused vacation time, and convert them into cash payments. *Id*. Plaintiff exercised this option, and on February 8, he sold 200 hours of unused vacation. *Id*. at ¶ 17. The Fire District amended his contract again on December 10, 2008, retroactive to July 2008. *Id*. at ¶ 18. The contract increased the vacation sell-back allotment to 260 hours, "and allowed conversion of non-cashable paid administrative leave into cashable vacation." *Id*. Plaintiff sold an additional 60 hours of vacation that December, and converted the maximum 260 hours on January 5, 2009. *Id*. at ¶ 20.

The complaint alleges that on January 30, 2009, plaintiff retired from the Fire District "pursuant to a defined plan administered by CCCERA, which allowed him to retire at the age of 50 with a pension benefit calculated by multiplying his highest compensation over any consecutive 12 months of employment by the product of 3% and his accrued years of service." *Id*. at ¶ 21. According to the complaint, "[i]n compliance with the rules governing the CCCERA

1    retirement plan, and consistent with the provisions of the California Constitution and the 1937

2    Act, calculation of Nowicki's highest 12 months of compensation included his annual salary,

3    vacation sell-backs, a Fire Retirement Allotment, uniform allowance, and vacation and personal

4    holiday payout upon retirement.  Application of the above factors to Nowicki's 28.3 years of

5    service resulted in a monthly pension benefit of $20,076.00 before taxes and other withholdings.

6    *Id*. at ¶ 22.

7        On August 5, 2015, plaintiff received a letter from the CCCERA Board informing him that

8    it had scheduled a hearing on September 9, 2015 to review what was described as ". . . acts of

9    pension spiking, through members' receipt of pay items that were not earned as part of their

10   regularly recurring employment compensation during their careers."  *Id*. at ¶ 24.  The letter also

11   informed plaintiff that his pension was subject to investigation and that the hearing would allow

12   him "the opportunity to present to the Board your position and any information you believe is

13   relevant to the calculation of your retirement allowance."  *Id*.  The letter also stated that plaintiff

14   "could submit written materials relevant to this issue in advance of the Board meeting" and that

15   "[a]ny public meeting materials prepared by CCCERA for the purpose of the hearing will be

16   provided to you in advance of the meeting."  Defendant's Request for Judicial Notice, Ex. A (Dkt.

17   No. 38-1).[1]

18       Plaintiff attended the administrative hearing and alleges he "was not given a full, fair and

19   reasonable opportunity to present evidence and to call witnesses supporting the validity of his

20   retirement benefit calculations."  Compl. at ¶ 25.  Plaintiff alleges,

21       Contrary to the Board's assurances in its August 5, 2015 letter, the requirements of
         the 1937 Act, and the due process and taking clauses of the U.S. Constitution and
22       the California Constitution, Nowicki was not given a full, fair and reasonable
         opportunity to present evidence and to call witnesses supporting the validity of his
23       retirement benefit calculations.  Nowicki was allotted an unduly restrictive amount
         of time in order to present his case.  In addition, the CCCERA Board declined
24       Nowicki's offer of witnesses.  None of the testimony before the Board was under
         oath.  Nor were the Board proceedings full, fair or unbiased.  The claims against
25       Nowicki were presented to the CCCERA Board by the same legal counsel who
         subsequently advised the CCCERA Board.  Furthermore, the CCCERA Board was

26

27       ─────────────
         [1]  CCCERA seeks judicial notice of the August 5, 2015 letter.  Federal Rule of Evidence
28   201 permits a court to take judicial notice of facts "not subject to reasonable dispute."  Fed. R.
     Evid. 201.  The Court GRANTS this request.

told during the deliberations that it need not find that Nowicki violated any law: "It does not have to be a violation. We don't have to show it to be improper. Remember that the word that's used is 'improper'. It's not 'illegal'. <u>We don't have to show a violation of the law.</u>" (Underlining added.) Furthermore, representatives of the Fire District declined to participate in the meeting, even though, as stated by counsel for the CCCERA, "But they received notice as well, since it is, you know, the benefits that they promised and that they're paying for that are at issue here today."

*Id.*

On September 11, 2015, CCCERA formally notified plaintiff that it was reducing his pension payments to $14,667.74 per month, stating that he "had caused his 'final average salary (compensation earnable) to be improperly increased at the time of retirement.'" *Id.* at ¶ 26. On September 21, 2015, plaintiff received another letter from CCCERA stating that plaintiff had received overpayments of retirement benefits in the amount of $585,802.90, plus $143,165.00 in interest, for a total repayment obligation of $728,967.90. *Id.* at ¶ 27. The complaint alleges that CCCERA offered plaintiff "several options for repayment of the alleged overpayments, including monthly installment payments over a period of approximately 6 years to be deducted from his monthly pension benefit payments; a lump sum repayment; or a reduction of his prospective monthly pension benefit payment until said amount had been repaid in full." *Id.*

On October 13, 2015, plaintiff filed a *pro se* petition for a writ of mandate pursuant to California Code of Civil Procedure § 1094.5 challenging the CCCERA's administrative decision. *Id.* at ¶ 8. The complaint alleges "[t]hat matter has not proceeded beyond the filling of a response by CCCERA. Nowicki has filed a dismissal of that matter, without prejudice, contemporaneous with the initiation of the present action." *Id.*

In this lawsuit, plaintiff alleges three federal causes of action against CCCERA and the Fire District: (1) deprivation of property without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 (first cause of action); (2) denial of equal protection of the law in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 (second cause of action); and (3) impairment of contracts in violation of Article I, Section 10 of the U.S. Constitution (sixth cause of action). The ninth cause of action for declaratory relief requests the Court to declare "that Defendants' denial of Nowicki's retirement benefits violates Nowicki's rights under the United States and California Constitutions as well as

4

breached the contracts between Nowicki and Defendants." *Id*. at ¶ 56. In addition, plaintiff alleges five claims under California law: (1) deprivation of property without due process of law in violation of Article 1, Section 7 of the California Constitution (third cause of action); (2) denial of equal protection of the law in violation of Article 1, Section 7 of the California Constitution (fourth cause of action), (3) breach of contract in violation of Cal. Code of Civ. Proc. § 1549 *et seq*. (fifth cause of action), (4) impairment of contracts in violation of Article 1, Section 9 of the California Constitution (seventh cause of action), and (5) breach of the duty of good faith and fair dealing (eighth cause of action).

Both sets of defendants move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir. 1981) (citations omitted).

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual."). When the complaint is challenged for lack of

subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

**II.     Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a complaint without leave to amend

is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## DISCUSSION

The CCCERA and Fire District defendants move to dismiss the federal claims for failure to state a claim. Defendants also contend that if the Court dismisses the federal claims, the Court should decline supplemental jurisdiction over plaintiff's state law claims. The Fire District also argues that the complaint generally lacks factual allegations against the Fire District defendants.

## I.    Deprivation of Property without Due Process of Law in Violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983

Plaintiff's first cause of action alleges that defendants violated his Fourteenth Amendment right to due process by retroactively denying him the property right of his pension and retirement benefits as determined in a procedurally flawed administrative hearing. Compl. at ¶ 33. Plaintiff alleges that the Board severely limited his time to present his case, failed to make witnesses available, and that the Board improperly relied on counsel who served in a "dual role as the attorney against him and as an advisor to the Board, who in turn gave faulty legal advice." *Id.*

Defendants contend that the complaint's allegations of due process violations are conclusory and fail to state a claim. Defendants argue that the pleadings and the hearing transcript, which was submitted by plaintiff and CCCERA,[2] demonstrate that plaintiff was provided with sufficient due process. Defendants note that on August 5, 2015, the Board provided

---

[2]   The parties seek judicial notice of various documents. Plaintiff has submitted with the current motions portions of the transcript from the administrative hearing, which he claims show that defendants denied him due process. CCCERA has also submitted portions of the administrative hearing transcript. Plaintiff also requests judicial notice of the following documents: (1) memorandum from Wrally Dutkiewicz, Compliance Officer, to the CCCERA Board, (2) CCCERA Liquidity Report, (3) data for 2015 Pensions for Contra Costa County Pension, and (4) memorandum from Jim Johnston, Fire Chief to the Board of Directors of the Moraga-Orinda Fire District. The Court takes judicial notice of these documents. Dkt. Nos. 35 & 38.

plaintiff with notice that it was evaluating whether his retirement benefits should be adjusted due to pension spiking and that it would hold a hearing on the matter on September 9, 2015; plaintiff was provided the opportunity to submit written materials in advance of the hearing; plaintiff did not request a continuance of the hearing; and plaintiff attended and spoke at the hearing for approximately four hours, and he was represented by counsel at the hearing. Defendants also emphasize that in addition to the pre-deprivation hearing, plaintiff also had the opportunity to pursue judicial review through a petition for administrative mandamus in California Superior Court.

"In order to state a claim under the Fourteenth Amendment, the complainant must allege facts showing not only that the State has deprived him of a . . . property interest but also that the State has done so without due process of law." *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985) (quoting *Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir. 1980)) (internal quotation marks omitted). "The determination of what procedures satisfy due process [in a given situation] depends upon an analysis of the particular case in accordance with the three-part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." *Orloff v. Cleland*, 708 F.2d 372, 378-79 (9th Cir.1983) (parallel citations omitted). In *Mathews*, the Supreme Court stated:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 333. The particular degree or amount of process required, however, "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* at 334.

"It is well settled that 'the root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" *Clement v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 331 (9th Cir. 1995) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541(1985)). "Although the pre-termination hearing need not be elaborate, 'some kind of hearing' must be afforded the employee prior to

termination. The essential requirements of this pre-termination process are notice and an opportunity to respond." *Clement*, 69 F.3d at 331 (quoting *Loudermill*, 470 U.S. at 544-45).

Here, there is no dispute that plaintiff has a significant property interest in his pension payments. Thus, the Court must evaluate whether plaintiff has stated a claim that he was denied due process during the pre-deprivation hearing he was provided. In conducting this analysis, the Court will consider both the complaint as well as the facts asserted in plaintiff's opposition briefs, which contain a more detailed statement of plaintiff's due process allegations.

### A. Vague, ambiguous and erroneous legal advice

Plaintiff first asserts that "[t]he description and application of [Government Code] Section 31539 by legal counsel was vague, ambiguous and erroneous." Opp'n at 9 (Dkt. No. 34). Plaintiff argues that the Board's counsel provided inaccurate legal advice to the Board when counsel stated that it was not necessary to show that plaintiff had acted illegally in order to find that § 31539 had been violated, and that it was sufficient to find that plaintiff had acted "improperly." Plaintiff cites the legislative history of Section 31539 to assert that "[w]hen viewed in light of its legislative history, it is clear that the authors of Section 31539 contemplated the phrase 'improper' to be applied to illegal conduct such as 'prosecution for crimes' or acceptance of 'kickbacks.'" *Id*. at 7 (discussing legislative history).[3]

---

[3] Section 31539 provides, in relevant part:

(a) The board of retirement may, in its discretion, correct any error made in the calculation of a retired member's monthly allowance or any other benefits under this chapter, if either of the following exist:

(1) The error in the calculation of the member's monthly allowance or other benefits under this chapter was made as a result of fraudulent reports for compensation made, or caused to be made, by the member for his or her own benefit.

(2) The member caused his or her final compensation to be improperly increased or otherwise overstated at the time of retirement and the system applied that overstated amount as the basis for calculating the member's monthly retirement allowance or other benefits under this chapter.

United States District Court
Northern District of California

Defendants argue that plaintiff's allegations regarding erroneous legal advice do not state a due process claim. Defendants note that plaintiff was represented by counsel at the administrative hearing (a fact that is not disputed by plaintiff), and they assert that if plaintiff or his counsel believed that the Board's counsel was providing erroneous legal advice, they had the opportunity at the hearing to present their alternative legal analysis to the Board. Defendants further argue that the post-deprivation procedures provided by California law through a writ petition in California Superior Court − which plaintiff initially pursued − provide the mechanism for addressing any alleged legal errors.

The Court agrees with defendants. As an initial matter, the Court notes that plaintiff cites inapposite case law involving constitutional vagueness challenges to statutes and regulations. *See, e.g.*, *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 512 (9th Cir. 1988) (vagueness challenge to regulations implementing treaty facilitating international circulation of audio-visual materials); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1180 (2008) (vagueness challenge to living wage ordinance); *Britt v. City of Pomona*, 223 Cal. App. 3d 265, 279 (1990) (vagueness challenge to municipal transient occupancy tax). None of the cases cited by plaintiff provide support for his assertion that his due process rights were violated by the Board's lawyer allegedly providing a vague or incorrect description of a statute to the Board.[4]

---

(b) The retirement allowance or other benefits under this chapter with respect to a retired member described in subdivision (a) shall be adjusted prospectively to the amount that would have been payable if the overstatement of the member's final compensation had not occurred.

(c) Adjustment of the member's retirement allowance or other benefits may also be implemented retroactively and include the collection or return of the overpayment of benefits. The board of retirement may direct staff to correct the overpayment of benefits by offsetting the amount to be recovered against future benefits. Adjustments to correct the overpayment of benefits may also be made by adjusting the allowance so that the retired member or the retired member and his or her beneficiary, as the case may be, will receive the actuarial equivalent of the allowance to which the member is entitled.

Cal. Gov't Code § 31539.

[4] The Court finds it unnecessary to determine whether the Board's counsel in fact provided erroneous legal advice. However, the Court notes that the Board's counsel stated that the statute would be violated by "improper" conduct, and Section 31539 uses the word "improper."

Plaintiff was represented by counsel at the hearing, and plaintiff and his counsel had the opportunity to challenge the lawyer's presentation of the law and present their arguments and interpretation of Section 31539. Due process requires a meaningful opportunity to be heard; it does not mandate that all parties to a proceeding provide clear or accurate presentations to the decision maker. Further, the post-deprivation process set forth in California Code of Civil Procedure § 1094.5 provides for judicial review of administrative decisions such as CCCERA's decision reducing plaintiff's retirement benefits. If plaintiff contends that the Board made a legal error, plaintiff had the opportunity to raise those arguments in a § 1094.5 proceeding.

### B. Board's counsel had "dual role"

Plaintiff alleges that "[t]he claims against Nowicki were presented to the Board by the same legal counsel who subsequently advised the Board." Compl. ¶ 25. Plaintiff contends that due process is violated when the same attorney functions as an advocate and as a consultant to the decision maker in the same case. (At the hearing on this motion, plaintiff's counsel stated that plaintiff does not allege that the Board's lawyer was a decision maker with regard to the reduction in his retirement benefits.)

Defendants contend that the complaint does not provide any facts to support a plausible claim that the Board's fiduciary counsel was an "advocate" against plaintiff. Defendants argue that the cases cited by plaintiff are distinguishable in that in each of those cases, the courts found due process violations because counsel had served both as an advocate in an adversarial proceeding and then advised the decision making body, or the counsel engaged in improper *ex parte* conduct. Defendants assert that in this case, the Board's counsel provided information and advice to the Board, and that all of this occurred publicly.

"Due process can permit the same administrative body to investigate and adjudicate a case." *Walker v. City of Berkeley*, 951 F.2d 182, 185 (9th Cir. 1991) (citing *Withrow v. Larkin*, 421 U.S. 35, 54-55 (1975)). In *Withrow*, the Supreme Court stated: "That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances

present in the case before it that the risk of unfairness is intolerably high." *Id.* at 58. In *Walker*, a city employee challenged her termination through the city's administrative process and also brought a federal lawsuit pursuant to 42 U.S.C. § 1983. The employee claimed that her due process rights were violated when the same city attorney functioned as the city's advocate representing the city in the employee's federal § 1983 lawsuit and also as the decision maker in the employee's administrative post-termination hearing. The Ninth Circuit agreed:

> In the instant case, both of the cases that the staff attorney handled involved the same parties and the same underlying issue—Walker's challenge to her termination. The staff attorney had to know that her decision on the merits as an administrator could play a major role in the outcome of the pending federal suit, in which she was representing the City. The staff attorney was able to establish an administrative decision in the City's favor, which was then introduced as evidence in the federal wrongful termination trial. Under the reasoning of *American General*, we agree that the staff attorney's dual role violated due process.

*Id.* at 185; *see also American Gen. Ins. Co. v. Federal Trade Comm'n*, 589 F.2d 462, 463 (9th Cir. 1979) (holding FTC commissioner should have disqualified himself from participation in FTC decision reviewing a merger where commissioner had previously appeared as attorney for the FTC in court proceedings opposing same merger); *City of Pleasanton v. Bd. of Admin. of the Cal. Pub. Employment Retirees' Ret. Sys.*, 211 Cal. App. 4th 522, 536 (2012) ("In sum, due process in the handling of an administrative appeal does not in general preclude the advocate for the agency staff's position from communicating with and making recommendations to the agency decision maker or the decision maker's advisors about the substance of the matter as long as (1) no part of the communication is made ex parte, (2) the administrative appellant is simultaneously afforded at least the same opportunity to communicate with the decision maker as the staff advocate, and (3) the decision maker is not subject to the advocate's authority or direction.").

Here, plaintiff has not alleged any facts showing that the Board's counsel acted improperly, as opposed to simply providing advice to the Board in a public setting. Plaintiff does not allege that the Board's counsel was a decision maker, let alone a biased one, nor does plaintiff allege bias on the part of any of the Board members who were the decision makers. Because the complaint does not allege any facts showing that the Board's counsel acted improperly, the Court concludes that plaintiff's conclusory allegations regarding counsel's dual role do not state a claim.

### C.     Witnesses

Although the complaint alleges that "the CCCERA Board declined Nowicki's offer of witnesses," Compl. ¶ 25, plaintiff's opposition clarifies that "[a] number of his witnesses were unavailable," and that "[t]he only witness he was able to present was his former spouse." Dkt. No. 34 at 14.

Defendants argue that plaintiff has not alleged a due process violation because he does not claim that the Board prevented from presenting any witnesses.  Defendants note that neither plaintiff nor his counsel ever requested to postpone the hearing due to insufficient time, and further that plaintiff and his counsel did not dispute the Board Chairperson's statement, at the end of the hearing, that "[N]otice of today's proceeding was delivered to Mr. Nowicki on or about August 5, 2015.  Between August the 5th and today, neither CCCERA nor our office received any request from either Mr. Nowicki or any counsel for Mr. Nowicki to continue this date or not have this held today because it was insufficient time or for any other reason."  Transcript at 217:16-218:1 (Dkt. No. 38-2).

The Court concludes that plaintiff's allegations fall short of stating a due process violation. "The Supreme Court has made clear that in circumstances in which a predeprivation hearing is required by due process, it 'need not be elaborate.'"  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 985 (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545 (1985)).  In *Brewster*, the plaintiff alleged that the school district did not provide adequate process prior to reducing his salary.  The Ninth Circuit held that the school district afforded the plaintiff adequate pre-deprivation process because he was notified in writing of the proposed salary reduction, given "ample opportunity to respond," "he was permitted a counseled, face-to-face confrontation" with the superintendent decision maker, and he was invited to submit evidence.  *Id.* at 985.  The Ninth Circuit noted,

> The hearing need not even approximate a trial-like proceeding; in fact, it may be "very limited" and still pass constitutional muster.  [*Gilbert v. Homar*, 520 U.S. 924, 929 (1997)].  A predeprivation hearing serves only as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges are true and support the proposed action."

13

> *Loudermill*, 470 U.S. at 545-46, 105 S.Ct. 1487. To that end, a plaintiff need only
> be accorded "oral or written notice of the charges against him, an explanation of the
> employer's evidence, and an opportunity to present his side of the story." *Id.* at
> 546, 105 S.Ct. 1487.

*Id.*; *see also Loudermill*, 470 U.S. at 546 (in case involving the discharge of several tenured state employees, constitutionally adequate predeprivation hearing consisted of: (1) oral or written notice to the employee of the "charges" against him; (2) an explanation of the employer's evidence; and (3) an opportunity to respond, either in person or in writing); *see also Pinnacle Armor, Inc. v. United States*, 648 F.3d 708 (9th Cir. 2011) (affirming dismissal of plaintiff's due process claim where plaintiff manufacturer whose product certification was revoked was provided notice of possible revocation and plaintiff was provided multiple opportunities to respond and submit evidence.).

Here, plaintiff does not claim that the Board prevented him from calling any witnesses. Instead, plaintiff complains that unspecified witnesses he wished to call were unavailable. Plaintiff's opposition brief emphasizes that during the hearing, plaintiff informed the Board:

> At the very last second at the beginning of this last month, we were forced to cancel
> our vacation at the very last minute with very little time to prepare. So a lot of the
> folks that I would like to have gotten in touch with and obtained affidavits from,
> either on vacation have been unable to respond to my request. I haven't heard back
> from a few. I'll give you their phone numbers and you can call them and ask them
> for validation or verification on anything that I'm saying.

Opp'n at 11 (Dkt. No. 34) (quoting transcript at 37:11-20). However, it is undisputed that plaintiff did not request a continuance of the hearing. Further, plaintiff does not cite any authority for the suggestion that the Board had an obligation to contact people who plaintiff wished to present as witnesses but who were either unavailable or not responding to plaintiff.

### D.     Time constraints

Finally, plaintiff asserts that he was "severely restricted in the time that was provided to him for addressing the issues raised by CCCERA." Dkt. No. 34 at 11. Plaintiff states that he presented his case for approximately four hours. *Id.* at 14. Plaintiff states that he began his presentation at 10:05 a.m., and that around 1:15 p.m., the following exchange took place between plaintiff and several of the CCCERA board members:

Nowicki: I would like to continue on. I mean, most of the discussion here has been answering questions from the Board; so I've got quite a bit left here.

Hast: How much time do you have left?

Nowicki: Another ten pages.

Hast: How many have we gotten through?

Nowicki: 3

Phillips: An hour was 1:15. My concern at the moment is to both have lunch and our executive session as quickly as possible and resume.

Holcombe: In an effort to try to still this down, respectfully, a lot of comments about your past education and career record and whatnot, none of that is in dispute. Certainly you're admired for all of your commitment to that. But for me, it's not relevant in terms of discussion before this group, and that holds true for quite a number of other items. It seems to me you can distill this down a little tighter.

Anderson: In regard to the due process standpoint, I want to make sure that we hear everything out that he wants to put before us.

Phillips: I'm certainly in agreement he needs all the time he needs. But just given the agenda and the commitments we had to others that are here, we need to have at least a piece of that so we can have that executive session. Can we combine the executive session and lunch and aim at 2 o'clock at this point, being back in public session and we can resume at that point.

Nowicki: At the same time, I'll start boiling this down a little more.

Phillips: If you can, please.

*Id*. at 11-12 (citing hearing transcript at 189:14-190:10).

Plaintiff states that the hearing recessed and resumed at 2:08 p.m., at which point he continued his presentation. Plaintiff asserts that "[h]is condensed presentation omitted discussion about the Brown Act, the statute that regulates open meetings of California public bodies, thinking it was unimportant." *Id*. at 13:24-28. Plaintiff asserts that he "assumed that the Brown Act was not significant since he believed that the Fire District Board had complied with the Brown Act. In fact, the Brown Act was one of two critical factors underpinning [the Board's] legal counsel's presentation." *Id*. at 13:27-14:1. Plaintiff notes that when the Board began its deliberations, one of the Board members asked the Board's counsel for a "quick primer" about "what's permissible in closed session regarding compensation," and that the Board's counsel stated that "what the Brown Act does not permit is that a majority of any governing body − a board of a fire district or a board of this retirement system − to conduct closed-session negotiations with the individual who is

15

United States District Court
Northern District of California

1    being compensated in closed session. . . ."  The Board deliberated and then voted to reduce

2    plaintiff's payments.

3         Defendants argue that plaintiff's own allegations and arguments show that he was provided

4    a meaningful opportunity to present his case.  Defendants note that plaintiff spoke for

5    approximately four hours, and they assert that the excerpt of the hearing relied upon by plaintiff

6    shows nothing more than the Board asking plaintiff to limit his comments to relevant information.

7    Defendants also note that a former director for the Moraga-Orinda Fire District testified for

8    plaintiff and discussed the District's efforts to comply with the Brown Act.  Defendants also assert

9    that the hearing transcript shows that plaintiff and the Board Chair worked collaboratively on

10   issues regarding scheduling and timing. Defendants note that after a short break during the

11   hearing, the Board Chair Mr. Phillips stated, "Mr. Nowicki has indicated that he hopes to be able

12   to conclude within an hour.  And on that basis, we will continue to meet for an additional hour and

13   take a break for lunch in a bit," and that plaintiff responded, "I think that timeframe is fair.").

14   Transcript at 134:1-6.  The available record also indicates that plaintiff had counsel with him, and

15   there is no indication in the excerpted testimony that counsel objected to the time limit.

16        The Court concludes that plaintiff has failed to allege a due process violation based on time

17   constraints. At most, plaintiff alleges that at one point during his presentation a Board member

18   asked plaintiff to distill his presentation to focus on matters relevant to the Board's inquiry.

19   Plaintiff states that his presentation to the Board lasted approximately four hours, and it was his

20   own decision to omit discussion of the Brown Act.  Further, plaintiff was provided the opportunity

21   to submit a written response prior to the hearing.  Under these circumstances, plaintiff has failed to

22   allege how he was denied due process in the administrative hearing.

23        Accordingly, the Court GRANTS defendants' motions to dismiss and GRANTS plaintiff

24   leave to amend this claim.  If plaintiff amends the due process claim, plaintiff must allege with

25   specificity how defendants violated his rights in light of the above discussion.  Further, because

26   both parties have submitted portions of the administrative hearing transcript, if plaintiff amends

27   the complaint and pursues the due process claim, the Court directs plaintiff to file the full hearing

28   transcript.  Further, if plaintiff chooses to amend this claim and to pursue it against the Fire

District defendants, plaintiff shall specifically allege how the Fire District defendants are liable for the CCCERA's decision to reduce plaintiff's retirement benefits.

## II. Denial of Equal Protection of the Law in Violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983

Plaintiff's second cause of action alleges,

Prior to retirement, Nowicki met with employees or consultants of the CCCERA to insure that his pension benefits were in compliance with those statutes, regulations and judicial precedent. The pension benefits obtained by Nowicki's predecessors and successors were in conformity with the same principles which were initially applied to Nowicki's retirement benefits. Selective enforcement under color of Government Code Section 31539 against Nowicki unfairly singled Nowicki out to bear the burden of government action in violation of the Equal Protection Clause as set forth in the Fourteenth Amendment of the U.S. Constitution.

Compl. at ¶ 36. Plaintiff alleges that CCCERA "arbitrarily and intentionally singled Nowicki out for adverse treatment" thereby denying him equal protection of the law.[5] *Id.* Plaintiff's opposition clarifies that his equal protection claim is based on *Village of Willowbrook v. Olech*, 528 U.S. 562 (2001) (per curiam), where the Supreme Court held that under some circumstances a plaintiff may state an equal protection claim on behalf of a "class-of-one." In such cases, a plaintiff may bring a "class-of-one" equal protection challenge where the plaintiff was (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Id.* at 564. Although not in the complaint, plaintiff's opposition asserts that plaintiff's retirement benefits were reduced pursuant to a "Retiree Lookback Project" enacted by CCCERA in or about 2013. Dkt. No. 34 at 4. Plaintiff states that under this policy, 188 retirees' benefits were evaluated, and plaintiff asserts that he "appears to have been the only retiree whose retirement benefits were retroactively reduced." *Id.* at 5.

CCCERA moves to dismiss this claim on the ground that a plaintiff may not bring a "class-

---

[5] The complaint alleges the federal equal protection claim against the CCCERA and Fire District defendants. However, plaintiff's opposition to the Fire District's motion to dismiss concedes that "the Fire District, as Nowicki's former employer, may not be held liable pursuant to a cause of action alleging denial of equal protection based solely on a class-of-one theory." Dkt. No. 39 at 1 n.1. At the hearing on defendants' motions to dismiss, plaintiff's counsel stated that plaintiff would not pursue an equal protection claim against the Fire District defendants.

1  of-one" equal protection claim to challenge discretionary state actions.   CCCERA relies on

2  *Engquist v. Oregon Department of Agriculture*, in which the Supreme Court held that a "class-of-

3  one" theory of equal protection claim is not cognizable in the public employment context.

4  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008).   In *Engquist*, a former state employee

5  asserted a "class-of-one" equal protection claim, alleging that she had been fired for "arbitrary,

6  vindictive, and malicious reasons."   *Id*. at 594.   The Court first noted that "government has

7  significantly greater leeway in its dealing with citizen employees than it does when it brings its

8  sovereign power to bear on citizens at large." *Id*. at 599.

9       The Court then analyzed other cases permitting "class-of-one" equal protection challenges

10  in the context of property assessment and taxation schemes.   *Id*. at 601-03 (discussing *Village of

11  Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam); *Sioux City Bridge Co. v. Dakota Cty*.,

12  260 U.S. 441 (1923); and *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S.

13  336 (1989)).   The Court noted that in those cases, "[w]hat seems to have been significant . . . was

14  the existence of a clear standard against which departures, even for a single plaintiff, could be

15  readily assessed."   *Id*. at 602.   In *Olech*, a property owner sought to connect her property to the

16  municipal water supply, and the village conditioned the connection on the grant of a 33-foot

17  easement, despite the fact that the village had consistently only required a 15-foot easement from

18  other property owners.   *Olech*, 528 U.S. at 563-64.   The *Engquist* court noted, "[t]here was no

19  indication in *Olech* that the zoning board was exercising discretionary authority based on

20  subjective, individualized determinations - at least not with regard to easement length, however

21  typical such determinations may be as a general zoning matter."   *Engquist*, 553 U.S. at 603-03.

22  Similarly, in *Allegheny Pittsburgh*, "the applicable standard was market value, but the county

23  departed from that standard in basing some assessments on quite dated purchase prices."   *Id*. at

24  603.   The Court found that *Sioux City Bridge*, "was the same sort of case, recognizing an equal

25  protection claim when one taxpayer's property was assessed at 100 percent of its value, while all

26  other property was assessed at 55 percent, without regard to articulated differences in the

27  properties."   *Id*.

28       In contrast to cases involving "clear standards," the Court held that,

18

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id*. at 603. The Court concluded that "[t]his principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id*. at 604.

CCCERA argues that plaintiff is challenging a discretionary decision by the CCCERA Board, and that plaintiff does not claim that there is any "clear standard" against which deviations can be measured. CCCERA contends that *Engquist* is not limited to the public employment context, but rather that what is relevant is the nature of the challenged decision. Similarly, CCCERA cites *Katzman v. L.A. County Metro. Trans. Auth.*, 72 F. Supp. 3d 1091, 1107 (N.D. Cal. 2014), in which Judge Koh applied *Engquist* to bar a class-of-one equal protection claim by a retired public employee who challenged his employer's suspension of his pension. *See also Quinn v. County of Monterey*, No. 15-03383, 2016 WL 4180565, at *6 (N.D. Cal. Aug. 8, 2016) (dismissing a class-of-one equal protection claim where the plaintiff alleged deputies treated her differently than her neighbor because "[i]n a context that involves as much discretion as police investigation, 'the rule that people should be 'treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.'") (quoting *Engquist*, 553 U.S. at 603). CCCERA also notes that California courts have recognized that public retirement boards are vested with broad discretion in administering their duties. *See Nasrawi v. Buck Consultants, LLC*, Cal. App. 4th 328, 342 (2014) ("Section 17 imposes various fiduciary duties on the board. Given the breadth of those duties, section 17 necessarily vests the board with discretion in the manner in which it fulfills those duties.").

Plaintiff counters that *Engquist* is limited to the public employment context, and plaintiff emphasizes that CCCERA was never plaintiff's employer. Plaintiff argues that he is suing CCCERA in its capacity as a regulator, and he cites *Olech* for the proposition that plaintiff may

19

proceed on his equal protection claim against CCCERA. Plaintiff also argues that *Katzman* is inapposite because in that case the plaintiff sued his former employer.

The Ninth Circuit recently addressed *Engquist* and the "class-of-one" doctrine in *Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012) (per curiam). In *Towery*, death row inmates alleged that the Arizona Department of Corrections' execution protocol violated the Eighth and Fourteenth Amendments. *Id*. The plaintiffs alleged that the protocol's grant of discretion to the ADC's Director to determine how each execution should be carried out violated their equal protection rights. *Id*. at 652. Specifically, the plaintiffs claimed that each was a "class-of-one" and that the protocol allowed the Director to treat them differently from others similarly situated without any rational basis for doing so. *Id*. at 660. The Ninth Circuit cited *Engquist* for the proposition that "[t]he class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Id*. (quoting *Engquist*, 553 U.S. at 603). The Ninth Circuit continued,

> Absent any pattern of generally exercising the discretion in a particular manner while treating one individual differently and detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory. In other words, the existence of discretion, standing alone, cannot be an Equal Protection violation. At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are.

*Id*. at 660-61.

In *Scocca v. Smith*, 912 F. Supp. 2d 875, 885 (N.D. Cal. 2012), Judge Chen cited this language from *Towery* to reject a defendant's argument that *Engquist* barred "class-of-one" challenges to all discretionary decisions. In *Scocca*, the plaintiff was denied a concealed weapon permit, and he alleged that he was treated differently from at least 70 other people who were granted concealed weapons permits. *Id*. at 877-78. Judge Chen declined to dismiss the "class-of-one" claim based on *Engquist*, stating that the Ninth Circuit's decision in *Towery* suggested that plaintiffs could, in some circumstances, bring "class-of-one" claims challenging discretionary decisions outside the employment context. *Id*. at 885. However, Judge Chen dismissed the equal protection claim for failure to allege facts to give rise to a plausible inference that the differential treatment was intentional. *Id*. at 885-86. "Plaintiffs have not alleged that Mr. Scocca alerted the

20

sheriff to the similarity between his situation and the situation of a least some of the seventy licensees. Nor have Plaintiffs alleged any reason why Sheriff Smith would single Mr. Scocca out for disparate treatment." *Id*. at 886. Judge Chen also found that the allegations the plaintiff was similarly situated to the other licensees were conclusory. *Id*. at 885.

The Court concludes that as currently alleged, plaintiff has not stated a "class-of-one" equal protection claim. In light of *Towery* and in the absence of on-point Supreme Court authority, the Court declines to hold as a matter of law that a plaintiff cannot bring a "class-of-one" equal protection challenge to a discretionary decision outside the employment context. However, the Court finds that plaintiff has not alleged facts showing that he was (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. Even if the Court considered the statements in plaintiff's opposition brief regarding the "Lookback Project," plaintiff has not alleged facts showing that he is similarly situated to the other retirees who did not have their retirement benefits reduced, nor has he alleged any facts showing that CCCERA intentionally singled out plaintiff for disparate treatment. Further, plaintiff has not alleged any facts in support of the allegation that there is no rational basis for the difference in treatment.

Accordingly, the Court GRANTS defendants' motions to dismiss this claim, and GRANTS leave to amend this claim only as against the CCCERA defendants.

### III.   Impairment of Contracts in Violation of Article I, Section 10 of the U.S. Constitution

Plaintiff's sixth cause of action alleges that "[t]he pension plan administered by CCCERA created a contractual relationship between Nowicki and the CCCERA pursuant to which Nowicki made periodic monetary contributions to the CCCERA in the expectation that he would receive certain defined pension benefits upon his retirement. The CCCERA's retroactive denial of Nowicki's retirement benefits constitutes a breach of the contract between Nowicki and the CCCERA." Compl. ¶ 45. Plaintiff also alleges that a contractual relationship existed between him and the Fire District, and that the "denial of Nowicki's retirement benefits" breached that contract. *Id*. at ¶ 46. Plaintiff alleges that "defendants' reliance upon California Government

Code Section 31539 to deny Nowicki's retirement benefits constitutes an impairment of contract in violation of Article I, Section 10 of the United States Constitution." *Id.* at ¶ 48.

Defendants contend that plaintiff fails to state a claim for a violation of the Contract Clause because plaintiff does not allege that defendants took any legislative action that harmed him. Defendants argue that the Contract Clause applies to the legislative power of the states, and not to a quasi-judicial or administrative application of the law. The Fire District additionally argues that even if plaintiff could allege a Contract Clause claim against CCCERA (which the Fire District asserts he cannot), none of the allegations relate to actions taken by the Fire District.

The Contract Clause of the U.S. Constitution prohibits states from passing laws "impairing the Obligations of Contracts . . ." U.S. Const. Art. 1, § 10. The Contract Clause applies to the legislative power of states, and prevents them from passing laws that facially and substantially impair contractual obligations. In *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co*., the Supreme Court explained,

> In order to come within the provision of the constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state. The prohibition is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals.

*New Orleans Waterworks Co. v. Louisiana Sugar Refining Co*., 125 U.S. 18, 30 (1888). The Court noted that "a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the state, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the constitution of the United States." *Id*. at 31; *see also U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 17 (1977) ("It long has been established that the Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties. Yet the Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive effects.") (internal citations omitted).

The Court concludes that plaintiff fails to state a claim for a violation of the Contract

Clause.  Plaintiff argues that his employment contract with the Fire District, which he entered into in 1983, along with his third party contractual interests in the contract between CCCERA and the Fire District, were impaired by Cal. Gov't Code § 31539.  However, plaintiff does not challenge the state's enactment of Section 31539, which on its face does not impair or invalidate the terms of either of the contracts cited by plaintiff.  Rather, plaintiff challenges CCCERA's decision to reduce his pension benefits pursuant to authority granted to the CCCERA through § 31539.  The impairment, if any, was not accomplished by a "law," but by an administrative or quasi-judicial decision.  *See Educ. Networks of America, Inc. v. Wasden*, Case No. 1:16-cv-00379-BLW, 2017 WL 411206, at *10 (D. Idaho Jan. 30, 2017) (dismissing Contract Clause claim where plaintiff challenged state official's amendment of contract and state attorney general's demand of repayment of monies paid under contract, holding that amendment was "ministerial and not reasonably characterized as legislative in nature" and attorney general's actions involved "case-by-case interpretation of an existing law, which necessarily arises in the context of enforcement, [and] is distinguishable from the issuance of a prospective policy or regulation of general applicability, which characterizes legislative action.").

Because plaintiff cannot allege any facts to state a Contract Clause claim, the Court DISMISSES this claim without leave to amend.

## IV.     State Claims

Additionally, plaintiff brings five state claims: (1) violation of due process, (2) violation of equal protection, (3) impairment of contracts, (4) breach of contract, and (5) breach of duty of good faith and fair dealing.  Defendants contend that the state claims should be dismissed for lack of jurisdiction following the dismissal of the federal claims.  The Fire District also contends that the complaint does not contain allegations specific to the Fire District defendants, and that plaintiff has failed to state a claim against the Fire District.

In light of the dismissal of the federal claims, the Court finds it unnecessary at this time to determine whether plaintiff has stated any state claims.  If plaintiff cannot state a federal claim for relief, it is the Court's intention to decline supplemental jurisdiction over any state claims.  The

Court advises plaintiff that if he wishes to pursue state law claims in this lawsuit, the amended complaint must specifically allege facts showing that each named defendant is liable under the different causes of action alleged. Further, to the extent the Court's analysis of the federal claims is applicable to plaintiff's state law claims (such as the state constitutional claims), plaintiff is advised to consider that analysis when amending the state law claims.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motions to dismiss on the federal impairment of contracts claim, declines to rule on the state claims, and GRANTS plaintiff leave to amend as set forth in this order. The amended complaint is due no later than **July 10, 2017**.

**IT IS SO ORDERED**.

Dated: June 27, 2017                    _____
                                        SUSAN ILLSTON
                                        United States District Judge